304    SUPREME COURT OF GEORGIA.

Dougherty vs. The Western and Atlantic Railroad Company.

MARY ANN DOUGHERTY, plaintiff in error, vs. THE WESTERN AND ATLANTIC RAILROAD COMPANY, defendant in error.

1. Samuel Mitchell, in 1842, executed a deed to the state of Georgia, containing the following grant:

" WHEREAS, The general assembly has, by law, provided for a great public work known as the Western and Atlantic Railroad, a part of which is located on lands belonging to me; now, be it known, that I, Samuel Mitchell, of the county of Pike, and state aforesaid, for and in consideration of the desire which I feel for the interest and prosperity of my state aforesaid, and with a desire to promote every improvement which may be to the welfare of said state, do, by these presents, concede and grant to the said state, for the use and purpose of said road, the right of way, comprising a road or tract of sufficient space and breadth to answer all the convenient and necessary purposes of said road as may be designated by the chief engineer of said state, over and upon a lot of land seventy-seven, (77) in the fourteenth district of Henry (now De-Kalb) county, Georgia, together with the privilege of taking and using timber, either stone or gravel, lying and being in said necessary space, for the construction of said road." * * * * * *

Lot number seventy-seven is part of the land on which the city of Atlanta is located. The chief engineer of the state, in the same year, by his assistant, laid off and located the right of way for the Western and Atlantic Railroad, on said lot of land, one hundred feet in width, making a chart of the same, which was deposited in his office. At the same time, said assistant engineer surveyed and located for Mitchell a part of the town lots in the city, on lot seventy-seven, including certain city lots numbered by him twelve and thirteen, making the boundary between them and the right of way so laid off, the line as now claimed by defendant, and drafted a map thereof. This was done by him as agent for Mitchell. The main track of the Western and Atlantic Railroad was shortly thereafter laid in the center of the right of way so designated. All the city maps show the same line as the boundary between lots twelve and thirteen, and the railroad. The deed to the state was recorded in October, 1849. In 1847 Mitchell sold lots twelve and thirteen, receiving part of the purchase money, and gave bond for titles. The representative of his estate executed a deed therefor in 1850 to the ancestor of complainant. In the bond and deed, the south line of said lots was given as being bounded by the Western and Atlantic Railroad:

Held, that the boundary of the right of way, as designated by the chief engineer or his assistant by his authority and under his direction, is binding on Mitchell, the grantor, and his privies.

Dougherty *vs.* The Western and Atlantic Railroad Company.

2. That any question as to the chief engineer having abused his power by laying off the right of way of an unnecessary width, should have been made at the time the same was done or within a reasonable time thereafter, and cannot be raised after the lapse of thirty years.

3. No negotiations or agreement between the officers of the Western and Atlantic Railroad and the purchaser of lots twelve and thirteen, were binding on the state, unless they were made by authority of law. Nor does any possession of, or dominion over. a portion of said right of way, even with the acquiescence of such officers, affect the state, so far as they concern the ascertainment of the true boundary of said right of way, or the right and title of the state to the same.

4. And this is true, whether the deed executed by Mitchell operated as a grant of the fee to the land, or an easement therein.

State. Prescription. Title. Land. Before Judge HOPKINS. Fulton Superior Court. October Term, 1873.

The pleadings and evidence in this case present, substantially, the following facts:

Complainant owns lots twelve and thirteen, on which the National hotel stands, in Atlanta. She sets up title to a strip of ground, say twenty feet wide, lying between the hotel wall and the railroad. The defendant was laying a side track on a part of this strip. She files this bill to enjoin the laying thereof. An interlocutory injunction was granted, which stood until the trial. The deed on which defendant relies was made by Samuel Mitchell, on the 11th day of July, 1842, the only material portion of which was as stated in the above head-note.

This deed was never recorded until the 11th day of October, 1849.

In 1842, but whether before or after the date of this deed, does not appear, F. C. Armes, as assistant to C. F. M. Garnett, who was then chief engineer, located the state square and the right-of-way through lot seventy-seven, leading to the square. There is no dispute that he (Armes) marked off this right-of-way one hundred feet wide east of Whitehall street, and both Armes and Garnett swear that, to the best of their recollection, it was one hundred feet wide west of Whitehall; and the evidence of L. P. Grant is to the same effect, who

swears that he often saw the original plat made by Armes.
There was no other designation of the width of the right-of-
way laid off, than that Armes ran the lines, and made a plat
of the ground, which was filed away in the chief engineer's
office. The original was lost long ago, and there is no copy or
duplicate, but Grant testifies that Vincent's map, made in the
year ......, was modeled after it. By Vincent's map the right-
of-way is one hundred feet wide the whole distance. In 1845
complainant's husband bought lots twelve and thirteen, built
a dwelling on the property, and it has ever since been in the
possession of those claiming under the Dougherty title.

But the bond for titles from Samuel Mitchell was not made
until the 23d day of February, 1847, which recites the pur-
chase money at $400 00, $240 00 of which was cash, and the
balance due December 25th, 1848. After taking this bond,
Samuel Mitchell died, and Patrick Connally, complainant's
father, having become the holder of the bond for titles, took
a deed from Mitchell's administrator. This deed is dated
28th day of January, 1850, and was recorded 8th day of Oc-
tober, 1850. The rights of Dougherty and Connally passed
to complainant by inheritance. This bond for titles, and deed
made under it, bound the lots on the south by the Western
and Atlantic Railroad.

East of Whitehall street the use and occupancy of the right-
of-way, to the width of one hundred feet, and up to the line
contended for by the defendant, has been uniformly recognized
by the coterminous proprietors. But west of Whitehall street
the holders of the Dougherty title have uniformly asserted
and maintained that the line was where complainant now con-
tends and held possession accordingly.

The main track of the Western and Atlantic Railroad was
laid along the locality in question in 1842, and for several
years there was no other track there but that. After some
years the Macon and Western Railroad and the Atlanta and
West Point Railroad, came in on the right-of-way of the West-
ern and Atlantic Railroad, and laid down two or three tracks
each, all south of said first track, but on right-of-way as laid

off by Armes. They ran four or five trains each per day, if not more. The Western and Atlantic Railroad had but the one main track west of Whitehall street until the shops were moved from the state square, in 1853—after that, had two sidelings laid down. None of these tracks encroached on the property claimed by complainant, except one for a short time, with her consent, her rights being then expressly acknowledged. After the Central Railroad leased the Macon and Western Railroad, it was determined, in 1872, to re-model the tracks in the yard at that point. In order to give the Central more room on the south side, the defendant determined to move its track some distance to the north, and by the plan of one of these changes, one of the sidelings, not the main track, would be on the disputed twenty feet. It was in testimony that more trains run, or have to be switched there now, than formerly, and more tracks are needed than when the road was located.

The freight depot buildings, shops, etc., were moved off the state square and off of the Samuel Mitchell lands in 1854, and located on lot number seventy-eight, and after that only the passenger business of the road was done at the state square where the union passenger depot is located. Vincent's map and Cooper's map were both put in evidence, and there was an agreement to use the originals in the supreme court, because impracticable to copy them.

The Dougherty conveyances call for two acres of land, more or less, and if complainant gets all she claims title to in this bill, she will have much less than that quantity.

The side track about being laid when the change in the tracks took place to give the Central Railroad more room, is the one sought to be enjoined by this bill. If the Macon and Western tracks and the Atlanta and West Point tracks were removed there would be room enough, and more than enough, for all purposes of the Western and Atlantic Railroad, without encroaching on the disputed ground.

There was no proof of notice to Dougherty or Connally of the deed of 1842. The court charged as follows :

" *Gentlemen of the jury:* It is said in the bill that complainant is owner of a certain lot of land in the city of Atlanta, which is described in the bill, to which she holds title under Samuel Mitchell; and that upon that land the Western and Atlantic Railroad Company has attempted to commit a trespass, and to put its tracks upon and occupy the land, and she asks the court to interfere and enjoin them from taking it. The defendant in the case says that the land on which it has entered was not the property of Mrs. Dougherty, but the property of the state of Georgia; and that it had been leased to defendant by act of the Legislature; that it has not passed beyond the limits of the land which the state held, and which had been conveyed to the defendant. You are to determine which is the true theory: whether the defendant, the Western and Atlantic Railroad Company, has gone upon land belonging to complainant.

" The defendant says that in 1842, Samuel Mitchell gave to the state of Georgia, for the purposes of the Western and Atlantic Railroad, a right of way for making a road or track of sufficient space or breadth to answer all convenient and necessary purposes of said road, as might be designated by the chief engineer of said state. And defendant further claims that that deed was recorded in 1849, and that subsequent to that date Mrs. Dougherty acquired her right to lots numbers twelve and thirteen; that its right to the property in dispute was acquired by a conveyance prior in time to hers; and that a deed made subsequently could not cover the land, which was granted under the conveyance made by Samuel Mitchell, in 1842, to the state.

"By the deed from Samuel Mitchell to the state, it was referred to the chief engineer to designate the precise parcel of land which was to pass under the deed to the state; and you are to look to the testimony in the case and see whether he did, under this deed, designate the right of way or tract of land which, in his judgment, was necessary for the purposes of the road under this deed. If he did that, and the state, by its officers, or agents of the Western and Atlantic Railroad,

Dougherty *vs.* The Western and Atlantic Railroad Company.

entered upon and occupied the land, or any portion of it, which was set apart by the chief engineer of the road, and held and retained it for railroad purposes, then, from the time this deed was recorded there would be notice to all parties of the extent of the claim thus made under the deed.

"I will state this again: The power of designating the precise locality of the land that was to be conveyed by deed was referred to the chief engineer of the road, and if he, in the honest discharge of his duty and exercise of his judgment, did designate such portion of that tract of land as would answer the convenient and necessary purposes of said road as a right of way, and he did that by a survey or other means; if it was thus chosen, and the road placed on that right of way, or a portion of it, and the deed was recorded, from the date of its record, it would be notice to all the world of the amount of land then taken and set apart under the deed.

"These are questions of fact for you to determine under the law. See if the testimony shows that the chief engineer, acting under authority, designated a tract or parcel of land to be taken by the state under this deed for the purposes named therein—a right of way for the state road; if he did, to what extent did it go—where does it lie? Is the property that is involved in this controversy embraced in that tract or parcel of land thus designated by him? If it is, and the conveyance made to complainant was made after the date of the record of the deed to the state, the title of the state would prevail over hers; it would be good in the state.

"If the property that has been entered on, and is in dispute, is not embraced in complainant's deed at all, she could not recover; if it does embrace it, and the road had already taken possession of it, and the deed had been recorded before hers, as hereinbefore stated, the title of the state would be paramount to hers.

"If you find that the land in dispute was not embraced in this Mithell deed to the state; that the land set apart under that deed did not extend to and embrace the property in dispute, but that complainant's deed extends to and embraces it,

then your verdict should be for her. If you find that the property set apart, designated by the engineer for the state road, did not extend to and embrace that in dispute, but that Mrs. Dougherty's deed did embrace it, then your verdict should be for complainant. It would be necessary, if you find for her, that you be particular and state what you find in your verdict; said premises should be described; you may designate the extent of the ground, beginning at the present building. If you see proper, you may make that the beginning point, or you may adopt such form in your verdict as you think proper, so that you distinctly locate the northern line of defendant's right of way and the southern boundary of Mrs. Dougherty's line. If you find for complainant, describe the premises and find that defendant be perpetually enjoined from encroaching on or occupying the same; if for defendant, say we find for defendant."

Under this charge, the jury found for the defendant.

The errors assigned are that the court erred in charging that the record of the defendant's deed, in 1849, enabled it to prevail over defendant's title. In charging that the survey made by Armes was a sufficient identification of the boundaries, and if the disputed track was within that survey, defendant's title would prevail. In charging that land, instead of the usufruct, passed under the state's deed; and excluding from the consideration of the jury the effect of complainant's evidence, showing possession of and dominion over the property, and acquiescence in the line claimed by her by the coterminous proprietors.

HILLYER & BROTHER, for plaintiff in error.

JULIUS L. BROWN, for defendant.

TRIPPE, Judge.

1. Without going into all the learning developed in the argument of this case, the decision of the controlling point in it may be limited to a single question: Was the boundary of

the right of way granted by Mitchell to the state, and which was designated by the chief engineer of the state, or under his authority, binding on the grantor of that right and his privies? The grant was executed in 1842. It conferred the power on the chief engineer to designate over and upon lot of land number seventy-seven, the right of way for the use and purpose of the Western and Atlantic Railroad, a great public work belonging to the state, comprising a road or track of sufficient space and breadth to answer all the convenient and necessary purposes of said road. In the same year the chief engineer, by his assistant, laid off and located under this grant the right of way for said road on said lot, one hundred feet in width. He made a chart of this survey, which was deposited in his office. At the same time, the same officer, as the agent of the grantor, surveyed and located for him a part of the lots in the city of Atlanta, on said lot seventy-seven. This survey marked out and bounded city lots twelve and thirteen, which were afterwards conveyed by Mitchell or his administrator by virtue of a bond of title given by Mitchell, to the father of complainant, whose right descended to her by inheritance. The agent of Mitchell made a map of this survey of lots twelve and thirteen, giving their southern boundary as the line of said right of way, which had been previously laid off and which is the line now claimed by defendant in error. The main track of the Western and Atlantic Railroad was shortly thereafter laid in the center of the right of way thus designated. All the city maps show the same line as the boundary between lots twelve and thirteen and the railroad. Mitchell lived more than five years afterwards, and there is no evidence of any complaint or protest on his part against the act of the engineer as the officer of the state, or as his own agent, nor was it shown that there was any abuse of authority on the part of the engineer in laying off said right of way of the width of one hundred feet. Certainly Mitchell acquiesced in this, all of which was done under his grant and by his authority. That he must have known all that was done, is a conclusion to which the evi-

dence irresistibly forces us. His own agent, who had also acted for the state in executing the authority Mitchell himself had conferred on him, had surveyed other of Mitchell's property lying on said right of way, marked out the lots for him and made their boundary line the very line to which the right of way was so laid off, and five years thereafter, in the bond for titles which he executed to a vendee of those lots, he recited that they were bounded on the south by the Western and Atlantic Railroad. There can be no doubt of his having notice, and being bound by this action of the very agent selected by himself to act for him and for the state. As against Mitchell, the right of way thus marked out, was complete and perfect in the state. Does a purchaser from him have a right that Mitchell did not have? It is not disputed that there are cases where a vendee may be protected in asserting what his vendor cannot. But this is not one of those. It is as strong a case of a purchaser having such notice, that will charge him with the necessity of making inquiry as to the right of another, as can be found. To sustain this position, it is not necessary to notice the questions arising out of the fact that the deed to the state from Mitchell was recorded before his vendee paid all the purchase money, and took his deed from Mitchell's representative. There is another fact that controls this question against plaintiff in error. In the bond for titles made by Mitchell in 1847, when a little more than half of the purchase money was paid, as well as in the deed of his representative made in 1850, when the balance of the purchase money was paid by Connally, the holder of the bond, it was recited that the southern boundary of the two lots included in those papers, was the Western and Atlantic Railroad, in the bond for titles it is called the state railroad. At the time the bond was executed the state had a complete and perfect right against Mitchell, the vendor. Its road was already laid in the center of said right of way. A chart of the one hundred feet had been made and was in the office of the chief engineer, in the city of Atlanta. There was no other place for it to be kept. No provision of law required

its registry, so as to be notice to the world. The state also held Mitchell's grant. Complainant's own title papers gave notice to those who took them, that the limit or boundary of this great public work, so-called in Mitchell's grant and belonging to the state, was the southern boundary of what was purchased from Mitchell in 1847—the two lots, twelve and thirteen. What was the limit or boundary of that road? Could the purchaser have thought it was only the eight or ten feet covered by the road bed? If he could claim that his line went beyond the outer limit of the one hundred feet, he could just as well say it reached to the bed of the road, to the end of the cross-ties, or to the line of the embankment or excavation. No one pretends this. About twenty feet is all that is claimed. Restricting the claim to this, is an acknowledgment that the right of the road extended beyond its bed. If so, how far? If the purchaser was bound to yield to the right of the road to go outside of what it in fact covered by its bed, then he is bound by what that right actually was. Five minutes inquiry would have informed him. His vendor, the owner of lot seventy-seven, did, in fact, put it in the bond that the road ran through the lot, that the two lots he was buying were bounded by it. That vendor had made the grant to the state. He knew how far the right of the state extended. The purchaser read his bond and saw the road with its cars running over it. It is impossible to conceive that he did not make the inquiry; that he was not, in fact, informed of the exact truth, and bought with full knowledge; at least the law charges him with all this. As authorities on the principle involved in this question I refer to 19 *Georgia*, 337; 26 *Ibid*, 132; 25 *Ibid*, 55; 48 *Ibid*, 585; 22 Maine, 312; 4 N. H., 397; 2 Mass., 508; 1 Pick., 174; 3 *Ibid*, 149; 2 Ves., 437; 16 *Ibid*, 250; 1 Sto. Eq., sec. 400; Sugden on Vendors, 1052.

2. As to the abuse of power by the chief engineer in laying off the right of way an unnecessary width, sufficient has been said to show that Mitchell was bound by the survey. He never complained. For five years he acquiesced, and, it may be said, ratified it, both in accepting the maps of lots

twelve and thirteen from his agent, and in selling by those maps. It certainly is too late now, under all those facts, after a lapse of thirty years, to raise that question.

3. No officer of the Western and Atlantic Railroad could, by any agreement or negotiation with the purchaser, made without authority of law, bind the state. No such authority was shown giving power to such officer to make admissions recognizing title out of the state, nor does the mere fact that complainant, or any one under whom she claims, did, by the acquiescence of such officer, hold possession for awhile, or exercise dominion over a portion of the right of way, affect the state, so far as they concern the ascertainment of the true boundary thereof, or the right and title of the state to the same. That right came from the grant from Mitchell. That boundary is what the survey of the chief engineer made it. What they were, was clearly shown. No acts or agreement with unauthorized officers of the state could take either away. No statute of limitation or prescription ran against the state so as to be a bar: Code, section 2682.

4. Whether the deed from Mitchell to the state operated as a grant of the fee, or an easement only, does not affect the questions involved: Tyler on Boundaries, 111; Wash. on Easements, 3.

Judgment affirmed.